**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

HIGHLAND CAPITAL CORPORATION,       :    Case No. 2:19-cv-14282-BRM-JAD

        Plaintiff,             :

                              :

        v.                 :

                              :

MATTHEW E. PASTO, M.D., *et al.*,      :

                              :

        Defendants.        :       **OPINION**

_____  :

MATTHEW E. PASTO, M.D.,        :

        Third-Party Plaintiff,   :

                              :

        v.                 :

                              :

SACRAMENTO VALLEY AFFILIATE   :
OF THE SUSAN KOMAN BREAST    :
CANCER FOUNDATION, INC., *et al.,*  :

                              :

        Defendants.        :

_____  :

**MARTINOTTI, DISTRICT JUDGE**

      Before the Court is Third-Party Defendant Sacramento Valley Affiliate of the Susan Komen Breast Cancer Foundation, Inc.'s ("SVA") Motion to Dismiss the Third-Party Complaint as to SVA pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 21.) Defendant/Third-Party Plaintiff Matthew E. Pasto, M.D. ("Pasto") opposes the Motion. (ECF No. 27.) Also before the Court is Plaintiff Highland Capital Corp.'s ("Highland") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 40.) Pasto opposes this Motion. (ECF

No. 45.) Having reviewed the submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, SVA's Motion to Dismiss is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter is a breach-of-contract action arising out of leases for medical equipment used in screening for breast cancer.

Highland, a Delaware corporation with a principle place of business in Little Falls, New Jersey, leased the equipment to Pasto. (*See* Not. of Removal (ECF No. 1) ¶ 4; *see also* the Compl. at Ex. A to Not. of Removal (ECF No. 1) at 4, ¶¶ 1, 16.) Pasto is a physician specializing in diagnostic radiology. (*See* Third-Party Compl. (ECF No. 3) at ¶ 9.) Pasto signed one lease with Highland for ultrasound equipment and another lease for mammography gear. (Pl.'s Statement of Undisputed Material Facts (ECF No. 40-4) ¶¶ 1, 14.) These leases granted Highland a security interest in the equipment. (*Id.*)

The Highland leases identify Pasto both as the "Borrower," as a presumably sole proprietorship based in Sunnyvale, California, and as the "Guarantor," as an individual residing in San Jose, California. (ECF No. 1 at 4, ¶¶ 2-3, at 5, ¶ 1.) Pasto admits signing the agreements, but denies "knowingly" entering the leases. (Def.'s Responsive Statement (ECF No. 45-1) ¶ 3-1, 3-1.) Indeed, Pasto alleges Highland negotiated the leases with Third-Party Defendants. (*See* Counterclaim (ECF No. 2) ¶¶ 2-9.)

Highland filed UCC-1 financing statements related to both leases. (*Id.* ¶¶ 5, 18.) Pasto defaulted on the payments required by these leases. (*Id.* ¶¶ 11, 20 (citing Def.'s Initial Disclosures, Pl.'s Ex. 4 (ECF No. 40-3) at 46 ¶ 3).)

In the five-count Complaint, Highland alleges two breach-of-contract claims, as well as conversion, unjust enrichment and estoppel against Pasto. Highland seeks $64,688.79, representing the amount owed on the unexpired ultrasound lease, plus costs, expenses, attorney's fees, and interest, as well $42,230.24, representing the amount owed on the unexpired mammography lease, plus costs, expenses, attorney's fees, and interest. (*Id.* ¶¶ 11, 26.)

In response, Pasto filed a Third-Party Complaint[1] naming as defendants James M. Drury, an individual residing in the County of Contra Costa, California; Martha Drury, also an individual residing in Contra Costa County, California; National Medical Partners Inc., a California corporation with a principal place of business in Danville, California; Life Saving Images Inc., a California corporation with a principal place of business in Sunnyvale, California; and SVA, a California corporation with a principal place of business in Sacramento, California (Together, "Third-Party Defendants"). (ECF No. 2 ¶¶ 3-7.)

The Third-Party Complaint alleges Pasto and the Third-Party Defendants entered a partnership agreement on May 1, 2016, for a business intended to provide breast-cancer-screening services throughout California. (*Id.* ¶ 9.) Pursuant to this agreement, Pasto was to read ultrasound and mammography images for the diagnosis of breast cancer. (*Id.*)[2] The Third-Party Defendants advised Pasto they would arrange leasing and financing of the necessary equipment. (*Id.* ¶ 11.) However, Third-Party Defendants also said Pasto must execute these equipment leases

---

[1] For the purposes of SVA's Motion to Dismiss, the Court accepts the factual allegations in the Third-Party Complaint as true and draws all inferences in the light most favorable to the Third-Party Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

[2] The copy of the Partnership Agreement was not submitted as an exhibit to the Third-Party Complaint.

himself because only a licensed physician can obtain such equipment. (*Id*. ¶ 11.) Based on these representations, Pasto signed the two lease agreements with Highland, in May 2016, for ultrasound and mammography gear. (*Id*. ¶ 12.) Separately, Pasto also entered a financing agreement with Everbank Commercial Finance Co. in February 2017 for the purchase of a new mammography-screening unit. (*Id*. ¶ 13.)

Third-Party Defendants prepared a separate agreement (the "Ultrasound Agreement") pursuant to which they would be responsible for all financial obligations related to the Highland lease of the ultrasound gear and would "personally guarantee the lease obligation and payments" to Pasto. (*Id*. ¶ 14.) Third-Party Defendants also agreed to pay Pasto $1,000.00 a month for "general consultation" regarding the ultrasound unit. (*Id*.) Third-Party Defendants prepared a similar agreement regarding the mammography system (the "Mammography Agreement"), though the consultation payment to Pasto for this equipment was $500 a month. (*Id*. at 15.) The Third-Party Complaint does not indicate whether the Ultrasound or Mammography Agreements were executed.[3]

On or about February 2, 2017, Third-Party Defendants and Pasto entered an oral agreement regarding the financing agreement with Everbank for the new mammography-screening unit on terms similar to the Ultrasound and Mammography Agreements. (*Id*. ¶ 16.) Pursuant to these agreements, Pasto was to be paid twenty to forty dollars ($20.00 to $40.00) for each mammogram he reviewed and $2,000 a month for work-related travel to a Merced, California, office, and for services. (*Id*. ¶ 18.)

---

[3] The Third-Party Complaint states that a copy of the Ultrasound and Mammography Agreements were attached as Exhibits 1 and 2. (ECF No. 3 ¶¶ 14, 15.) No exhibits were attached to the Third-Party Complaint. An executed equipment lease between Highland and Pasto was attached to a February 14, 2020 letter from Pasto to the Court, along with mammography and ultrasound agreements between Pasto and Life Saving Images, executed by Pasto and, for Life Saving Images, James Drury. (*See* ECF No. 23 at 7-9.)

In February 2017, Third-Party Defendants assumed sole possession and control of the partnership business and business assets, excluding Pasto from the business and without paying Pasto any income or disbursements under the partnership agreement. (*Id*. ¶ 19.) Since January 2017, Pasto "has been burdened" with the lease for the Sunnyvale property, equipment leases and other financing obligations without any contribution from Third-Party Defendants. (*Id*. at 21.) The partnership has never been dissolved. (*Id*. at 20.)

In the three-count Third-Party Complaint, Pasto alleges breach of contract, breach of fiduciary duties, and conversion against the Third-Party Defendants and seeks not less than $65,123.00 for unpaid rental reimbursement, professional fees and services, as well as $340,123.00 for compensatory damages, and $345,601.00 for the value of the equipment converted, and interest. (*Id.* at 9, ¶¶ 3, 7.)

### A.  Procedural History

Highland filed its five-count Complaint on April 10, 2019 in Superior Court of New Jersey, Passaic County. (*See* Complaint (ECF No. 1, Ex. A) at 4.) Pasto, acting *pro se*, removed the action to this Court on June 27, 2019. (Notice of Removal (ECF No. 1).) Pasto filed an Answer and Counterclaim against Highland on July 8, 2019, alleging at least $300,000.00 of damages from fraud but relying on the counts and allegations elucidated in a separate but concomitantly filed Third-Party Complaint. (ECF Nos. 2, 3.) Highland filed an Answer to Pasto's Counterclaim on July 29, 2019. (ECF No. 5.)

On November 20, 2019, this Court issued a Notice of Call for dismiss pursuant to Fed. R. Civ. P. 4(m) as to all Third-Party Defendants. (ECF No. 11.) On November 26, 2019, SVA filed an application to extend its time for filing an Answer. (ECF No. 12.) That application was granted, extending SVA's time for filing an Answer to December 11, 2019. (*See* 12-3-2019

Docket Entry.) Pasto was granted a 30-day extension for serving the Third-Party Defendants. (ECF No. 15.) On December 18, 2019, SVA received a second extension of the deadline for filing an Answer, to January 15, 2020. (ECF No. 17.) On January 14, 2020, Pasto was granted a second 30-day extension for serving the other Third-Party Defendants, to February 14, 2020. (ECF No. 20.)

SVA filed its Motion to Dismiss the Third-Party Complaint as to SVA on January 15, 2019. (ECF No. 21.) Pasto filed a letter to the Court on February 25, 2020, that was construed by the Court to be untimely opposition to that Motion. (ECF No. 27; *see also* July 2, 2020 Text Order (ECF No. 41).) SVA filed a Reply on February 27, 2020. (ECF No. 28.)

Pasto filed a Motion to Transfer this litigation to the United States District Court for the Northern District of California on March 20, 2020. (ECF No. 32.)

Highland filed its Motion for Summary Judgment on June 30, 2020. (ECF No. 40.)

Pasto's Motion to Transfer was fully briefed and argued via a remote hearing on July 2, 2020, during which the Motion was denied. (ECF No. 41.)

Pasto filed his opposition to Highland's Summary Judgment Motion on July 27, 2020. (ECF No. 45.) Highland filed a Reply on August 14, 2020. (ECF No. 47.)

## II.   LEGAL STANDARD

### A.  Motion to Dismiss Pursuant to Rule 12(b)(2)

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86-87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (quoting *Carteret Sav.*

*Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). Pursuant to Federal Rule of Civil Procedure 4(e), a district court may exercise personal jurisdiction according to the law of the state where it sits. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 317); *see also Metcalfe*, 566 F.3d at 334 ("Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction."). General jurisdiction requires continuous and systematic contacts, and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Daimler*, 517 571 U.S. at 119 (quoting *Int'l Shoe Co.*, 326 U.S. at 318). Specific jurisdiction exists when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler*, 571 U.S. at 127 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984).

"Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction

7

requires that the 'plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citing *Pinker*, 292 F.3d at 368.) The defendant must have "'purposefully directed' his activities at residents of the forum and the litigation [must] result[] from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Metcalfe*, 566 F.3d at 334. Further, the Due Process Clause of the Fifth Amendment requires that a "defendant has constitutionally sufficient 'minimum contacts' with the forum" and that "the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Pinker*, 292 F.3d at 369 (citing *Burger King Corp.*, 471 U.S. at 474 and *Int'l Shoe Co.*, 326 U.S. at 316).

While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*.") (emphasis added). "It may be that whatever special rule exists permitting continuous and systematic contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990).

### B.  Summary Judgment Pursuant to Rule 56

Summary judgment is appropriate if materials in the record show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Materials in the record include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of

production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III. DECISION

### A. SVA's Motion to Dismiss

SVA argues this Court has no jurisdiction over it because SVA is, as an affiliate of the national Susan G. Komen for the Cure nonprofit organization (the "Foundation"), a California corporation with a principal place of business in Sacramento, California, and offices only in

Rancho Cordova and Fresno, California. (*See* SVA's Br. in Sup. of Mot. (ECF No. 21-1 at 1).)

SVA further contends that, as it operates solely in California, it has no offices or employees in

New Jersey. (*Id.*) As a consequence of this, SVA argues it has no contacts with New Jersey and

therefore this Court has neither general nor specific jurisdiction over it.

Pasto counters that SVA is a California chapter of a national organization with chapters

in every state of the U.S., including New Jersey, and that it accepts donations from across the

country. (Pasto Letter (ECF No. 27) at 5.) Pasto maintains this Court has specific jurisdiction

over SVA because the litigation arises out of "SVA's involvement with Drury in what was likely

part of a nationwide effort by the Komen Foundation to provide mobile screening for breast

cancer." (*Id.* at 7-8.) Pasto argues this Court has general jurisdiction over SVA because SVA is

an affiliate of a nationwide charity and it has local affiliates in New Jersey. (*Id.* at 9.) The Court

is not persuaded it has jurisdiction over SVA.

The Third Circuit has explained that a Rule 12(b)(2) motion

> is inherently a matter which requires resolution of factual issues
> outside the pleadings, i.e. whether in personam jurisdiction
> actually lies. Once the defense has been raised, then the plaintiff
> must sustain its burden of proof in establishing jurisdictional facts
> through sworn affidavits or other competent evidence. . . . [A]t no
> point may a plaintiff rely on the bare pleadings alone in order to
> withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of
> in personam jurisdiction. Once the motion is made, plaintiff must
> respond with actual proofs, not mere allegations.

*Miller Yacht Sales*, 384 F.3d at 101 n.6 (*quoting Patterson v. FBI*, 893 F.2d 595, 603–604 (3d

Cir. 1990) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d

Cir. 1984)) (internal citations omitted). In arguing this Court has general and specific jurisdiction

over SVA because it either is part of a national organization with affiliates that raise money in

New Jersey or because it is "very likely" the national organization plans a nationwide breast-

cancer-screening program, Pasto has not met his burden of bringing actual proof that jurisdiction is appropriate. The Court examines Pasto's general and specific jurisdiction arguments in turn.

### i. General Jurisdiction

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In New Jersey, "courts may exercise jurisdiction over a nonresident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 589 (2010), *rev'd on other grounds sub nom., J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). "Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

General jurisdiction over a corporate defendant typically arises under one of two alternate avenues. *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 382–83 (M.D. Pa. 2009). First, a plaintiff may show that a defendant possesses "systematic and continuous contacts" with New Jersey. *Id.* In the alternative, a plaintiff may demonstrate that a foreign corporate parent "so controls or is controlled by an in-forum affiliate . . . that the two corporations operate as a single, amalgamated entity." *Id.* This second avenue often is described as an alter-ego relationship, which "allows the court to impute the domestic entity's activities to the foreign organization when analyzing jurisdictional contacts." *Id.* (quoting *Lucas v. Gulf & W. Indus.,* 666 F.2d 800, 805–06 (3d Cir.1981), *abrogated on other grounds by EF Operating Corp.*

*v. Am. Bldgs.,* 993 F.2d 1046, 1049 & n.1 (3d Cir. 1993)).

With respect to the first avenue, the Supreme Court emphasized in *Daimler* the general jurisdiction inquiry when a corporation is involved "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' [but] whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 564 U.S. at 919). The Supreme Court explained that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760. For a corporate defendant, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Id.* (internal citation omitted).

Pasto appears to maintain this Court has general jurisdiction over SVA via the partnership he alleges was entered into by himself and the Third-Party Defendants, arguing that such entities are citizens of all states where any of their partners or members are citizens. (ECF No. 27 at 9 (citing *Carden v. Arkoma Assoc.*, 494 U.S. 185, 192-195 (1990.) Pasto then contends SVA is an affiliate of a national charitable organization, the Foundation, and that this national status is a basis for general jurisdiction. (*Id.*)

With regard to this first avenue, the Court notes that the Third-Party Compliant identifies SVA as a California corporation with a California principal place of business. (ECF No. 3 ¶ 7.) In fact, all of the Third-Party Defendants are identified as either California corporations or citizens. (*Id.* ¶¶ 2-6.) It follows, therefore, that Pasto cannot assert any partnership-based nexus for general jurisdiction, because only California citizens or corporations are alleged to have entered this partnership. Nor can Pasto properly assert this Court's jurisdiction over SVA based on any SVA contacts with New Jersey, because he hasn't alleged any. SVA maintains it has no

corporate presence in New Jersey, and has no offices or employees in New Jersey. (*See* SVA Br. in Supp. of Mot. (ECF No. 21-1) at 1.) SVA does not certify to these facts. However, when jurisdiction has been challenged the burden falls on the party asserting jurisdiction to provide appropriate evidence. *Fatouros*, 627 F. App'x at 86-87 (citing *Metcalfe*, 566 F.3d at 330 (quoting *Pinker*, 292 F.3d at 368. Pasto has not provided any evidence to contradict SVA's contentions.

Pasto appears to rely on the fact that SVA is an affiliate of a national organization that "has local chapters in New Jersey" giving this Court jurisdiction over SVA because the jurisdiction this Court may have over those local New Jersey chapters can be imputed to the national organization, and then to SVA. Pasto's argument is unavailing.

"A plaintiff may rely upon an alter ego connection to acquire jurisdiction over either a foreign parent or a foreign subsidiary based upon their relationship with an in-forum entity." *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d at 385 (citing *Simeone,* 360 F.Supp.2d at 675). Pasto, however, provides no details about any New Jersey chapters of the Foundation by which the Court could conclude those local chapters are the alter ego of the Foundation or that the Foundation is the alter ego of those local chapters. Pasto has cited no cases supporting the proposition that alter-ego connections can be imputed in the manner in which he argues, and the Court declines the opportunity to extend alter-ego liability in such a manner. Accordingly, the Court concludes it does not have general jurisdiction over SVA. The Court now must evaluate Pasto's contention this Court has specific jurisdiction over SVA.

### ii.  Specific Jurisdiction

The Third Circuit has set out the following three-part test for determining whether a court has specific jurisdiction over an out-of-state defendant:

> First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S.

462, 472, 105 S. Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (internal quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros,* 466 U.S. at 414, 104 S. Ct. at 1872; *O'Connor,* 496 F.3d at 317. And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S. Ct. at 2184 (quoting *Int'l Shoe,* 326 U.S. at 320, 66 S. Ct. at 160).

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

Pasto argues SVA is subject to specific jurisdiction of this Court because it partnered with Drury for mobile breast-cancer screening initiatives, using equipment that was the subject of the leases signed by Pasto. (ECF No. 27 at 5.) SVA counters that the Third-Party Complaint provides no basis for concluding SVA purposely directed any activities at New Jersey. (ECF No. 21-1 at 5.) The Court agrees, and therefore concludes Pasto has failed to provide any evidence pertaining to the first prong of the *D'Jamoos* three-part test.

The Third-Party Complaint alleges the Third-Party Defendants proposed to Pasto a partnership for obtaining equipment needed for breast-cancer screening, equipment Pasto ultimately would finance through a New Jersey company, Highland. (ECF No. 3 ¶¶ 9-21.) The Third-Party Complaint does not specify SVA's rule in these events, nor does the Third-Party Complaint provide the agreements at issue.

However, in a February 2020 letter to the Court, Pasto provided copies of three agreements, all executed by Pasto. (ECF No. 23.) The first agreement is labeled "Equipment Lease Agreement," and it is executed by Pasto and Highland's president. (*Id.* at 6-7.) The second is labeled "Mammography System Agreement," and it is executed by Pasto and Drury, who is identified as the Chief Executive of Life Saving Images Inc. (*Id.* at 8.) The last is titled "Ultrasound Agreement," and it is executed by Pasto and Drury, again identified as Chief

Executive of Life Saving Images Inc. (*Id.* at 9.) These documents provide no basis for concluding that SVA purposely directed any activities toward New Jersey.

Pasto counters that SVA "purposely did business with Mr. Drury and used equipment he said was his to perform breast-cancer screening that was financed by [Highland] through Dr. Pasto's personal guarantee via the agreement with Mr. Drury." (ECF No. 27 at 2.) Even accepting the facts alleged by this argument as true, though they are not included in the Third-Party Complaint nor evidenced by any certifications or exhibits, this argument still fails to demonstrate how SVA itself, as opposed to Drury, purposely directed any activities toward New Jersey. There is no specific allegation SVA itself was involved in leasing the equipment.[4] Rather, Pasto appears to argue that merely using equipment leased through a New Jersey company can constitute SVA's purposeful direction of its activities at New Jersey. However, Pasto has not provided any case law to support this proposition of imputed purposely directed activities.

In the alternative, Pasto asks for jurisdictional discovery in order to "understand the relationship between SVA/Komen Foundation and Mr. Drury."

The Federal Rules and this Circuit permit discovery of jurisdictional facts which are relevant and not privileged. *Formula One Licensing BV v. F1 New Jersey, LLC*, 180 F. Supp. 3d 330, 340 (D.N.J. 2015) (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1041 (3d Cir. 1997)); *see also* Fed. R. Civ. P. 26(b)(1) (providing that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.") In the Third Circuit, there is a presumption in favor of allowing discovery to establish personal jurisdiction, "unless the plaintiff's claim is 'clearly

---

[4] In fact, the Third-Party Complaint makes no distinction among the Third-Party Defendants to enable the Court to ascertain which discrete actions can be attributed to which Third-Party Defendants.

frivolous.'" *Mass. Sch. of Law*, 107 F.3d at 1042 (quoting *Nehemiah v. The Athletics Congress,* 765 F.2d 42, 48 (3d Cir.1985) (citing *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 362 (3d Cir. 1983))). The request for jurisdiction discovery is denied because Pasto has not shown with reasonable particularity that SVA may be subject to jurisdiction in New Jersey. *Formula One Licensing*, 180 F. Supp. 3d at 345. Rather, Pasto has used such phrases as "completely plausible," or "could potentially have," or "might have spurned [sic]," or, finally, "was likely part of," all while arguing SVA reached out to New Jersey by using equipment financed by Highland through agreements to which SVA was not a party.

While the Court begins its inquiry with a presumption in favor of jurisdictional discovery, the Court "must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum." *Formula One Licensing*, 180 F. Supp. 3d at 345. Pasto has not provided any evidence SVA has even a single direct connection with New Jersey. *Id.* Accordingly, SVA's Motion to Dismiss is **GRANTED** and Pasto's request for jurisdictional discovery is **DENIED**. The Court now turns to Plaintiff's Summary Judgment Motion.

### B.  Highland's Motion for Summary Judgment

Highland argues summary judgment is warranted because there are no genuine factual disputes in what it describes as "a simple commercial collection matter." (Pl.'s Br. in Supp. of Mot. (ECF No. 40-1) at 16.) More specifically, Highland maintains it has presented a *prima facie* breach-of-contract case by producing documents evidencing that Highland and Pasto entered the lease agreements, that Pasto failed to make payments beginning in November 2018, that Highland has evidenced a sum certain due on those leases, and that Highland is therefore entitled to collect that sum certain. (*Id.* at 18.)

Pasto counters that a genuine dispute of material fact exists over whether there was a meeting of the minds between Pasto and Highland, meaning that a valid contract may not have been formed, and thus cannot be enforced through this action. (Def.'s Br. in Op. to Mot. (ECF No. 45) at 9-15.)

"To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain[ ] damages." *EnviroFinance Grp., LLC v. Env't Barrier Co., LLC*, 113 A.3d 775, 787 (N.J. App. Div. 2015) (citing *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. App. Div. 2007)).

Under New Jersey law, "[a] contract term is generally binding if the contract has been mutually agreed upon by the parties, is supported by valid consideration, and does not violate codified standards or offend public policy." *Mucciariello v. Viator, Inc.*, Civ. No. 18-14444, 2019 WL 4727896, at *3 (D.N.J. Sept. 27, 2019) (citing *Hoffman v. Supplements Togo Management, LLC*, 18 A.3d 210, 216 (N.J. Super. App. Div. 2011) (citing W. *Caldwell v. Caldwell*, 138 A.2d 402, 410-11 (1958))). "The element of mutual assent will not exist, however, unless the parties have reached a meeting of the minds, and have 'been fairly informed of the contract's terms before entering into the agreement.'" *Mucciariello*, 2019 WL 4727896, at *3 (quoting *Hoffman*, 18 A.3d 210, 216 (N.J. Super. App. Div. 2011) and (citing *Pop's Cones, Inc. v. Resorts Int'l Hotel*, 704 A.2d 1321, 1323-324 (N.J. Super. App. Div. 1998)). Mutual assent "requires that the parties agree 'on essential terms and manifest an intention to be bound by those terms.'" *McNutt v. Estate of McNutt*, Civ. No. 9-2, 2009 WL 3756907, at *4 (D.N.J. Nov. 6, 2009), *aff'd*, 386 F. App'x 113 (3d Cir. 2010) (citing *Lankford v. Irby,* Civ. No. 04–2636, 2006 U.S. Dist. LEXIS 70862, *13, 2006 WL 2828552 (D.N.J. Sept. 29, 2006) (quoting *Weichert Co.*

18

*Realtors v. Ryan*, 608 A.2d 280, 284 (1992). Further, a "meeting of the minds" is an "essential element to the valid consummation of a contract." *McNutt*, 2009 WL 3756907, at *4 (quoting *DeVries v. The Evening Journal Ass'n,* 87 A.2d 317, 318 (N.J. 1952)).

Pasto maintains there could not have been any meeting of the minds between himself and Highland because he did not negotiate the agreements that bear his signature. (ECF No. 45 at 15.)[5] Instead, Pasto argues, those leases were negotiated by Highland and Drury, who presented Pasto with the agreements for execution. (*Id.*) Highland counters that it is undisputed Pasto signed the agreements, and under New Jersey law Pasto's signature constitutes a "conclusive presumption that one has read and understood what one has signed." (ECF No. 47 at 2 n.2 (quoting *Fleming Companies, Inc., v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 843 (D.N.J. 1995)).

In New Jersey, a fundamental element of contract formation is "a meeting of the minds of the contracting parties." *In re Marcalus Mfg. Co.*, 120 F. Supp. 784, 787 (D.N.J. 1954) (citing *DeVries v. Evening Journal Ass'n*, 87 A.2d 317, 318 (N.J. 1952). As the New Jersey Supreme Court stated in *DeVries*, "until [the parties] are settled and their minds meet upon [matters material to the contract], it is not a contract, although as to some matters they may be agreed." *DeVries*, 87 A.2d at 318. If the agreement is bilateral, "the offeror and offeree, alike, must express agreement as to every term of the contract." *Marcalus Mfg.*, 120 F. Supp. at 786 (internal quotation marks omitted) (citing *Larsen & Fish, Inc., v. Schultz*, 69 A.2d 328, 329 (N.J. Super. App. Div. 1949)).

---

[5] In his Counterclaim, Pasto actually alleges Highland and Third-Party Defendants colluded to defraud Pasto via the leases. (ECF No. 2 ¶¶ 3-4.) Without ascribing any motive, it is clear from the Counterclaim and Third-Party Complaint Pasto at the least alleges Drury and Highland actually negotiated the leases executed by Pasto.

Here, Pasto argues there was no meeting of the minds between the parties to the leases, Pasto and Highland, because the agreements actually were negotiated by Drury with Highland. (*See* Counterclaim (ECF No. 2) ¶ 3 (citing Third-Party Complaint (ECF No. 3) ¶¶ 11, 12; *see also* 7-27-20 Cert. of Pasto (ECF No. 45-2) ¶ 15-16).)

Highland does not dispute Pasto's contention. Instead, Highland argues the negotiations are of no moment because the agreements contained a so-called hell-or-high-water provision barring Pasto from raising "any abatement, set-off, defense or claim for any reason." (ECF No. 40-1 at 4 (citing Decl. of Ross Juliano (ECF No. 40-3), Exs. A, B, ¶ 2).) Highland contends *Canon Financial Services, Inc. v. Clean Slate LLC* stands for the proposition that such provisions are fully enforceable in New Jersey. (ECF No. 40-1 at 4 (citing *Canon Financial*, No. BUR-L-868-15, 2017 WL 2223819, at *2 (N.J. Super. Law Div. January 20, 2017)). Highland further maintains that delivery of the equipment rendered that "hell or high water" clause "irrevocable" and the lease "not subject to cancellation, termination, modification, or substitution." (ECF No. 40-1 at 4 (quoting *Canon Financial*, 2017 WL 2223819, at *5; also citing *Ascentium Capital LLC v. Bayshore Medical Associates, Inc.*, No. SOM-L-1327-16, 2017 WL 5195938 (N.J. Super. Law Div. June 23, 2017)).)

Highland's argument is unavailing. In the Complaint, Highland alleges Pasto selected the equipment and purchased the equipment from a vendor. (ECF No. 1, Ex. A ¶¶ 3-4, 18-19.) However, Highland does not make any allegation about whether or when Pasto came into actual possession of the equipment. In the Third-Party Complaint, Pasto alleges Third-Party Defendants had full possession and control of the equipment as of February 2017. There is no allegation in the Third-Party Complaint regarding when delivery of the equipment to Pasto was made. Highland cannot argue the leases became irrevocable upon delivery, because delivery of the

equipment was never alleged in the Complaint nor in Highland's Statements of Undisputed Material Facts. This failure similarly dooms Highland's Motion for Summary Judgment on the remaining Unjust Enrichment, Conversion and Estoppel claims, all of which are dependent upon Pasto having come into possession of the equipment.

Similarly, Highland also cannot argue valid contract formation on the basis of Pasto's performance under the agreements because Highland nowhere specifically alleges, let alone evidences, Pasto actually performed, meaning that he made any payments required by the lease; Highland alleges only that Pasto defaulted on one lease in November 2018 and on the other lease in December 2018. (*Id.* ¶¶ 7, 22.) While the allegations in the Complaint assume payments by Pasto before November 2018 and December 2019, in a Motion for Summary Judgment all inferences are to be drawn in favor of the nonmoving party, here Pasto. *Marino*, 358 F.3d at 247. Consequently, the Court concludes summary judgment for Highland at this time, on the facts and record actually before this Court at this time, would be inappropriate because there are genuine disputes of material fact at issue.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**, and SVA's Motion to Dismiss is **GRANTED**, and Pasto's request for jurisdictional discovery is **DENIED**. An appropriate Order follows.


Date: September 16, 2020               */s/ Brian R. Martinotti*
                                       **HON. BRIAN R. MARTINOTTI**
                                       **UNITED STATES DISTRICT JUDGE**